Sheehan & Associates, P.C.
Spencer Sheehan
spencer@spencersheehan.com
(516) 303-0552

United States District Court
Eastern District of New York                                              1:19-cv-02960

| | |
|---|---|
| Sharise Dalton, Nancy Bierly, Paula Leblanc, Jane Doe, individually and on behalf of all others similarly situated<br><br>                                    Plaintiffs<br><br>                      - against -<br><br>Mott's LLP<br><br>                                    Defendant | Complaint |

Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.      Mott's LLP ("defendant") manufactures, distributes, markets, labels and sells carbonated soft drinks ("CSD") under the Stewart's Fountain Classics brand (the "Products").

2.      The Products are sold to consumers from third-party retailers, including brick-and-mortar stores and online.

3.      The Products are sold in 12 oz (355 mL) embossed glass bottles and are represented as "nostalgic 'old fashioned' fountain sodas, having originated at the Stewart's Restaurants, a chain of root beer stands started in 1924."[1]

4.      The relevant varieties include Orange 'n Cream Soda, Black Cherry, Cherries 'n Cream, Grape, Cream and Key Lime.

---

[1] https://en.wikipedia.org/wiki/Stewart%27s_Fountain_Classics

1

5. The characterizing flavors of the Products are: Lime ("Smooth Lime Taste"), Black Cherry ("Rich Black Cherry Taste"), Cream and Orange ("Creamy Orange") and Vanilla ("Creamy Vanilla Taste").

| Key Lime | Black Cherry | Orange 'n Cream | Cream Soda |

   

6. For the Key Lime, Black Cherry and Orange n Cream, the flavor source is located inconspicuously in the lower right corner and is declared as "Naturally and Artificially Flavored."

7. For the Cream Soda, the flavor source is "Artificially Flavored."

8. Reasonable consumers understand the term "flavor" by its common dictionary definitions – "the way something tastes" and "the quality of something that affects the sense of taste."[2]

9. "Many foods or beverages are flavored—but how can you tell where those flavors come from? For example, if you're digging into a bowl of cereal that has the word "maple" on the package, and even images of maple leaves, you may think you're eating a product that contains

---

[2] https://www.merriam-webster.com/dictionary/flavor, https://www.vocabulary.com/dictionary/flavor

maple syrup. But not so fast—the taste may come from added flavors."[3]

10. Whether or not the flavoring of the Products is derived from the ingredient referenced or if it is from a source other than the ingredient, is material because if the former, it would be a more expensive, natural flavor, as opposed to artificial flavor.

11. Where the characterizing flavor is presented in prominent type and font size and no reference is made to whether it is natural or artificial, reasonable consumers will expect that flavor to be solely a natural flavor.

12. The Products are required to state the source of the characterizing flavors either immediately preceding or following it, without any intervening material, to prevent the consumer from being misled as to thinking the source of the flavor was natural.[4]

13. Instead, the origins of the characterizing flavors are set off from the actual flavor claim (i.e., Smooth Lime Taste) by the entire length of the label, separated several inches across the Product's logo and vignette.

14. Given the prominence accorded to the characterizing flavor claims, the corresponding notation of artificial flavor in the lower right corner renders such statement unlikely to be read by the ordinary person under customary conditions of purchase and use.

15. The representation of "Creamy Vanilla Taste" gives consumers the impression the Cream Soda will contain vanilla in a form expected by consumers –extract, flavor, or natural vanilla flavor.

---

[3] https://www.fda.gov/consumers/consumer-updates/whats-name-what-every-consumer-should-know-about-foods-and-flavors
[4] 21 C.F.R. 101.22(i)(3).




16. Instead, the Products are "Artificially Flavored," indicated in the lower right corner of the front label and on the ingredient list and do not contain any form of real vanilla flavor.




17. Vanilla is the only flavor that has a standard of identity, because it is the most widely

4

appreciated by consumers.

18. Because it is highly regulated, the term "vanilla" is carefully and accurately used, so that consumers are not misled as to whether they are actually getting vanilla.

19. Consumers value the representation "CREAMY VANILLA TASTE" because studies have found that real vanilla simulates a creamy texture, satisfying consumers' needs for consumption of fat-rich foods, without the actual fat and calories.[5]

20. The representations seek to capitalize on consumer affinity for vanilla yet fail to disclose the absence of real vanilla components.

21. The Cream Soda contains direct and/or indirect representations with respect to the primary recognizable flavor – vanilla.

22. Mass spectrometry testing on the Cream Soda will or has revealed that to the extent the Cream Soda contains any component related to real vanilla, it is or will be revealed as ethyl vanillin – a compound which has no relationship to the vanilla plant.

23. Defendants' product labels did not disclose that it contains no vanilla and that because if there were vanilla, the ingredient list would indicate this as required and permitted by law.

24. The nostalgic imagery and glass bottles assist in focusing the consumers' attention on the upper-right characterizing flavor claim, and away from the inconspicuous disclosure of artificial flavors at the bottom of the label.

25. Defendants actions were undertaken to compete with the rise of artisanal beverage producers who include actual vanilla, derived from the vanilla plant, in their products.

---

[5] Sarah Kirkmeyer. et al., "Understanding creaminess perception of dairy products using free-choice profiling and genetic responsivity to 6-n-propylthiouracil," Chemical Senses 28.6 (2003): 527-536.

5

26. The Products contain other representations which are misleading and deceptive.

27. As a result of the false and misleading labeling, the Products are sold at a premium price – no less than $2.99 per product, excluding tax – compared to other similar products represented in a non-misleading way.

### Jurisdiction and Venue

28. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

29. Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

30. This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

31. Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and State.

32. A substantial part of events and omissions giving rise to the claims occurred in this District.

### Parties

33. Plaintiff Dalton is a citizen of Queens County, New York.

34. Plaintiff Bierly is a citizen of Seminole County, Florida.

35. Plaintiff Leblanc is a citizen of Middlesex County, Massachusetts.

36. John and Jane Doe plaintiffs are citizens of the other 47 states who have been affected by the conduct alleged here but their true identities are not fully known.

37. John and Jane Doe may be used in the complaint to refer to representatives of sub-classes of the various states and at such time their identities will be disclosed.

38. The allegations as related to laws of other states where no named plaintiff has been disclosed serves as a placeholder upon joinder or amendment.

39. Defendant is a Delaware general partnership with a principal place of business in Plano, Texas and upon information and belief, no partners are citizens of New York.

40. During the class period, plaintiffs purchased one or more Products for personal use, consumption or application with the representations described herein, for no less than the price indicated, *supra*, excluding tax, within their districts and/or states.

41. Plaintiffs paid this premium because prior to purchase, plaintiff saw and relied on the misleading representations.

42. Plaintiffs would consider purchasing the Products again if there were assurances that the Products' representations were no longer misleading.

## Class Allegations

43. The classes will consist of all consumers in the following states:  all, New York, Florida, Massachusetts, California, who purchased any Products containing the actionable representations during the statutes of limitation.

44. A class action is superior to other methods for fair and efficient adjudication.

45. The class is so numerous that joinder of all members, even if permitted, is impracticable, as there are likely hundreds of thousands of members.

46. Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if plaintiff(s) and class members are entitled to damages.

47. Plaintiff's claims and the basis for relief are typical to other members because all

were subjected to the same representations.

48. Plaintiff(s) is/are an adequate representative because his/her/their interests do not conflict with other members.

49. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

50. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest.

51. Plaintiff(s) counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

52. Plaintiff(s) seeks class-wide injunctive relief because the practices continue.

<u>New York General Business Law ("GBL") §§ 349 & 350, Florida Deceptive and Unfair Trade Practices, Act *Florida Statutes*§ 501.201, Massachusetts Unfair and Deceptive Practices Act, Mass. Gen Laws ch. 93A, California Consumers Legal Remedies Act, Civ. Code §§ 1750-1785 ("CLRA") and Consumer Protection Statutes of Other States and Territories</u>

53. Plaintiffs and John and Jane Doe plaintiffs, representing the 47 other states where they reside and purchased the Products, incorporate by reference all preceding paragraphs and assert causes of action under the consumer protection statutes of all 50 states.

a. Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1, *et. seq.*;

b. Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et. seq.*;

c. Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et. seq.*;

d. California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* and Unfair Competition Law, Cal. Bus. Prof. Code §§ 17200- 17210 *et. seq.*;

e. Colorado Consumer Protection Act, Colo Rev. Stat § 6-1-101, *et. seq.*;

f. Connecticut Unfair Trade Practices Act, Conn. Gen Stat § 42-110a, *et. seq.*;

g. Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et. seq.*;

h. District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901, *et. seq.*;

i. Florida Deceptive and Unfair Trade Practices, Act *Florida Statutes* § 501.201, *et. seq.*;

j. Georgia Fair Business Practices Act, §10-1-390 *et. seq.*;

k. Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statutes § 480 1, *et. seq.* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statute § 481A-1, *et. seq.*;

l. Idaho Consumer Protection Act, Idaho Code § 48-601, *et. seq.*;

m. Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et. seq.*;

n. Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et. seq.*;

o. Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et. seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann § 365.020, *et. seq.*;

p. Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51:1401, *et. seq.*;

q. Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et. seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et. seq.*;

r. Massachusetts Unfair and Deceptive Practices Act, Mass. Gen Laws ch. 93A;

s. Michigan Consumer Protection Act, §§ 445.901, *et. seq.*;

t. Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et. seq.*; and Minnesota Uniform Deceptive Trade Practices Act, Minn Stat. § 325D.43, *et. seq.*;

u. Mississippi Consumer Protection Act, Miss. Code An. §§ 75-24-1, *et. seq.*;

v. Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et. seq.*;

w. Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code § 30-14-101, *et. seq.*;

x. Nebraska Consumer Protection Act, neb. Rev. Stat. § 59 1601 *et. seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et. seq.*;

y. Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et. seq.*;

z. New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et. seq.*;

aa. New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 1, *et. seq.*;

bb. New Mexico Unfair Practices Act, N.M. Sta. Ann. §§ 57 12 1, *et. seq.*;

cc. New York General Business Law ("GBL") §§ 349 & 350;

dd. North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et. seq.*;

ee. Ohio Rev. Code Ann. §§ 1345.02 and 1345.03; Ohio Admin. Code §§ 109;

ff. Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et. seq.*;

gg. Oregon Unfair Trade Practices Act, Ore. Rev. Stat. § 646.608(e) & (g);

hh. Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1 *et. seq.*;

ii. South Carolina Unfair Trade Practices Act, S.C. Code Law § 39-5-10, *et. seq.*;

jj. South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et. seq.*;

kk. Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et. seq.*;

ll. Vermont Consumer Fraud Act, Vt. Stat. Ann. Tit. 9, § 2451, *et. seq.*;

mm. Washington Consumer Fraud Act, Wash. Rev. Code § 19.86/0101, *et. seq.*;

nn. West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et. seq.*;

oo. Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, *et. seq.*

54. Named plaintiff asserts causes of action under New York General Business Law ("GBL") §§ 349 & 350.

55. Jane Doe plaintiffs assert causes of action under the laws of the other 47 states, including the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 ("CLRA").

56. Defendant's acts, practices, advertising, labeling, packaging, representations and omissions are not unique to the parties and have a broader impact on the public.

57. Plaintiffs desired to purchase products which were as described by defendant and expected by reasonable consumers, given the product type.

58. Jane Doe California plaintiff and members of the California Subclass engaged in transactions as consumers who bought the Products for personal, family, or household consumption or use. Cal. Civ. Code § 1761(d)-(e).

59. In accordance with Civ. Code § 1780(a), Jane Doe California Plaintiff will seek injunctive and equitable relief for violations of the CLRA and an injunction to enjoin the deceptive advertising and sales practices.

60. After mailing appropriate notice and demand Jane Doe California Plaintiff will have mailed and/or have amended the complaint to include a request for damages. Cal. Civil Code § 1782(a), (d).

61. The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA.

62. Defendant violated the consumer protection laws of the states indicated.

63. Pursuant to California Civil Code § 1780(a)(2) and (a)(5), Jane Doe California Plaintiff will seek an order that requires Defendant to remove and/or refrain from making representations on the Products' packaging misrepresents the characterizing flavor sources.

64. Plaintiffs and prospective class members may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

65. The representations and omissions were relied on by plaintiff and class members, who paid more than they would have, causing damages.

### Violations of California's False Advertising and Unfair Competition Law
(On Behalf of California Subclass)

66. Jane Doe California Plaintiff realleges paragraphs above.

67. Defendant falsely advertised the Products by obfuscating sources for the characterizing flavors.

68. Jane Doe California Plaintiff and other members of the California Subclass were injury in fact and lost money or property as a result of Defendant's violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 et seq.

69. Jane Doe California Plaintiff seeks an order requiring Defendant to remove and/or refrain from making the representations on the Products' packaging.

### Violations of California's Unfair Competition Law
(On Behalf of the California Subclass)

70. Jane Doe California Plaintiff realleges all paragraphs above.

71. Defendant violated California's Unfair Competition Law ("UCL") and the Bus. & Prof. Code §§ 17200-17210, as to the Jane Doe Plaintiff California Subclass by engaging in

unlawful, fraudulent, and unfair conduct as a result of its violations of (a) the CLRA, Cal. Civ. Code § 1770(a)(5), (a)(7), and (a)(9); (b) the FAL, Cal. Bus. & Prof. Code § 17500 et seq.; and (c) the Cal. Bus. & Prof. Code §§ 17580-17581.

72. Defendant's acts and practices violate the UCL's proscription against fraudulent and unfair conduct.

73. Defendant's misleading marketing, advertising, packaging, and labeling of the Products is likely to deceive reasonable consumers.

74. Jane Doe California Plaintiff and other members of the California Subclass were deceived due to Defendant's marketing, advertising, packaging, and labeling of the Products, which misrepresent and/or omit the true facts.

75. Jane Doe California Plaintiff and the other California Subclass members suffered substantial injury by buying Products they would not have purchased absent the unlawful, fraudulent, and unfair marketing, advertising, packaging, and labeling or by paying a premium price for the Products.

76. There is no benefit to consumers or competition by deceptively marketing and labeling the Products.

77. Pursuant to California Business and Professional Code § 17203, Jane Doe California Plaintiff and the California Subclass seek an order that Defendant:

(a) remove and/or refrain from making representations on the Products' packaging which are misleading;

(b) provide restitution to Jane Doe California Plaintiff and the other California Class members;

(c) disgorge all revenues obtained as a result of violations of the UCL; and

(d) pay Jane Doe California Plaintiff and the California Subclass' attorney fees and costs.

## Negligent Misrepresentation

78. Plaintiff incorporates by references all preceding paragraphs.

79. Defendant misrepresented the organoleptic, sensory, health, quality and other attributes of the Products and took advantage of cognitive shortcuts made by consumers take at the point-of-sale.

80. Defendant had a duty to disclose and/or provide a non-deceptive, lawful description and emphasis of the Products' attributes and qualities, with respect to the flavoring.

81. This duty is based on defendant's position as a trusted entity which has held itself out as having special knowledge in the production, service and/or sale of the product type.

82. Defendant negligently misrepresented and/or negligently omitted material facts.

83. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

84. Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, thereby suffering damages.

## Breach of Express Warranty and Implied Warranty of Merchantability

85. Plaintiff incorporates by references all preceding paragraphs.

86. Defendant manufactures and sells products which misrepresent the characterizing flavors by failing to indicate whether they are artificial flavors in a manner that would be conspicuous.

87. Defendant warranted to plaintiff and class members that the Products' flavoring

attributes were different than they were, which was not truthful and misleading.

88. Plaintiff desired to purchase products which were as described by defendant.

89. Defendant had a duty to disclose and/or provide a non-deceptive description of the Products and knew or should have known same were false or misleading.

90. The Products did not conform to their affirmations of fact and promises, wholly due to defendant's actions.

91. The Products were not merchantable in their final sale form.

92. Plaintiff and class members relied on defendant's claims, paying more than they would have.

## Fraud

93. Plaintiff incorporates by references all preceding paragraphs.

94. Defendant's actions were motivated by increasing their market share amongst artisan, small batch carbonated soft drinks.

95. Plaintiff and class members observed and relied on defendant's claims, causing them to pay more than they would have, entitling them to damages.

## Unjust Enrichment

96. Plaintiff incorporates by references all preceding paragraphs.

97. Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE,** plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff(s) as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct such practices to comply with the law;

3. Injunctive relief for members of the New York Subclass pursuant to GBL §§ 349 and 350, without limitation;

4. An award of restitution pursuant to California Business and Professions Code §§ 17203 and 17535 for Jane Doe California Plaintiff and members of the California Subclass;

5. An award of disgorgement pursuant to California Business and Professions Code §§ 17203 and 17535 for Jane Doe California Plaintiff members of the California Subclass;

6. An order enjoining Defendant, pursuant to California Business and Professions Code §§ 17203 and 17535, to remove and/or refrain from using representations on Defendant's Products described here;

7. Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law, GBL, CLRA and other statutory claims;

8. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

9. Such other and further relief as the Court deems just and proper.

Dated:   May 19, 2019

                                                 Respectfully submitted,

                                                 Sheehan & Associates, P.C.
                                                 /s/Spencer Sheehan
                                                 Spencer Sheehan (SS-8533)

505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552
spencer@spencersheehan.com

1:19-cv-02960
United States District Court
Eastern District of New York

Sharise Dalton, Nancy Bierly, Paula Leblanc, Jane Doe individually and on behalf of all others similarly situated

Plaintiff

- against -

Mott's LLP

Defendant

# Complaint

Sheehan & Associates, P.C.
```
505 Northern Blvd., #311
   Great Neck, NY 11021
   Tel: (516) 303-0052
```
Fax: (516) 234-7800

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: May 19, 2019

/s/ Spencer Sheehan<br>Spencer Sheehan